UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ELIZABETH TORRES o/b/o E.M.T.,           **MEMORANDUM & ORDER**
                                                                    09 CV 0059 (RJD)
                 Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
------------------------------------------------------------X
DEARIE, Chief Judge.

       Pro se plaintiff Elizabeth Torres seeks review of the decision of the Commissioner of Social Security ("Commissioner") denying her minor son E.M.T.'s application for supplemental security income. The Commissioner has moved for judgment on the pleadings. While there is no dispute that E.M.T. suffers from mild asthma, is learning disabled, and has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), the Court finds that the Commissioner's decision that these impairments do not so markedly limit E.M.T.'s ability to function that he can be considered disabled is supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed and plaintiff's action is dismissed.

## BACKGROUND

       Torres filed a disability application on E.M.T's behalf in September 2006 when E.M.T. was ten years old and a fourth grade student at a public school in Brooklyn. Torres claims that the combination of E.M.T.'s asthma, learning disability, and ADHD was disabling as of September 1, 2003.

       E.M.T. has a history of mild intermittent bronchial asthma. (Tr. 173.) Although the medical records do not reflect the frequency and severity of the attacks, Torres claims that E.M.T. experienced his first attack when he was an infant, that he averages three attacks every

six months, and that the attacks are mostly brought on by changes in the weather. With the exception of his first attack, no hospitalization has been required and the attacks are treated at home or by a pediatrician. E.M.T. takes the Albuteral inhaler as needed to lessen the severity of the attacks. (Tr. 146, 219.) Medical reports and Torres's testimony indicate that other than his mild asthma condition E.M.T. is in good physical health. (Tr. 187-89, 273.)

E.M.T. also has a "history of hyperactivity, excessive distractibility, and a 'slight' learning disability." (Tr. 150.) In November 2004, Torres, concerned that E.M.T., in the second grade at the time, was hyperactive in school and unable to concentrate on his schoolwork, requested that E.M.T. be examined by a school social worker. The social worker noted that E.M.T. had been held back in the first grade due to poor performance and was having difficulties in the second grade. The social worker also noted that while E.M.T. was liked by school staff and friendly with his classmates, he was "hyperactive" and was "considered somewhat of a behavior problem at school because he is unable to sit in his seat for any long period of time [and] his behavior can be disruptive." (Tr. 147.)

The following month, E.M.T. underwent a Psycho-Educational evaluation conducted by the New York City Department of Education Committee on Special Education. The evaluator noted that E.M.T. separated easily from his mother, seemed to enjoy the full attention of an adult in the one-on-one setting, remained compliant throughout the evaluation, and attempted all tasks presented to him. E.M.T.'s speech was "generally fluent," he spoke in "full and complete sentences," and he expressed himself well during both informal conversation and formal tasks. While E.M.T. could not remain seated and moved around during the evaluation, he kept to the task assigned to him, and on the few occasions that he lost focus the evaluator was able to bring him back to the assigned task with minimal prompting. (Tr. 140-41.) The evaluator further

noted that E.M.T. was "very well behaved," complied with her requests, and did not appear to have any social or emotional concerns that would adversely affect his ability to function in a general education class. (Tr. 144-45.)

As part of the evaluation, E.M.T. was administered the Stanford-Binet Intelligence Scales: Fifth Edition test. He obtained a full scale IQ score of 80, placing him at the 9th percentile, which is considered to be the low average range of general intellectual ability relative to children of comparable age. (Tr. 144.) E.M.T. was also administered the Woodcock-Johnson III Tests of Achievement. Results indicated that E.M.T.'s overall academic skills were at the 2.1 grade level; depending on the academic subject, E.M.T. tested between the 1.6 and 2.9 grade levels. (Tr. 144.) Based primarily on these evaluations the Department of Education classified E.M.T. as "learning disabled" and recommended that he be placed in a general education class with special education teacher support services outside the classroom five periods a week. (Tr. 129-39.)

In December 2004, E.M.T underwent a pediatric neurological exam at SUNY Downstate Medical Center by Dr. Geetha Chari. Dr. Chari found him alert, active, and cooperative. E.M.T. responded to Dr. Chari's questions and his speech was fluent. His motor assessment was normal. Dr. Chari opined that E.M.T's history of learning and behavior problems were suggestive of ADHD and she recommended that he undergo counseling and psychotherapy. (Tr. 187-89.)

In May 2006, E.M.T. was diagnosed with ADHD by psychologist Dr. Lawrence Lasky and referred to Dr. Richard Hames for treatment. (Tr. 152.) On May 10, 2006, Dr. Hames prescribed 5 milligrams of Focalin once a day to control E.M.T.'s ADHD. In a follow-up visit on June 1, 2006, Dr. Hames reported that the Focalin seemed to be working as E.M.T. showed signs of being more focused and was not hyper. Dr. Hames reported that the medication had not

3

caused any side effects and he renewed the prescription. Dr. Hames reached similar conclusions on September 14, 2006, and again renewed the Focalin prescription. His clinical notes indicate that he did not see E.M.T. for several months and that in November 2007 he considered E.M.T.'s treatment terminated because E.M.T. had not come for an office visit for "some time." On December 18, 2007, Dr. Hames saw E.M.T. for the first time in more than a year when Torres brought E.M.T. for an office visit after some of E.M.T.'s teachers noticed that his attention span lessened in the afternoon. Dr. Hames increased the Focalin dosage to 10 milligrams. (Tr. 251-53.)

Torres filed E.M.T's disability application in September 2006. In October 2006, as part of the Commissioner's review of E.M.T.'s claim, E.M.T.'s fourth grade teacher was asked to complete a Teacher Questionnaire with instructions to compare E.M.T.'s functional limitations on specific domains to that of same-age children who do not have limitations. (Tr. 159.) E.M.T's teacher opined that overall E.M.T. had a "slight problem" acquiring and using information, "no problem" to a "slight problem" attending and completing tasks, a "slight" to "obvious problem" interacting and relating to others (but that it had not been necessary for her to implement behavior modification strategies), a "slight problem" moving about and manipulating objects, and a "slight problem" caring for himself. E.M.T.'s teacher further opined that E.M.T. "has been making progress academically and even though easily distracted and playful is working seriously to improve. With constant supervision [E.M.T.] will continue to make good progress academically and also will mature in behavior." (Tr. 159-66.)

In November 2006, as part of the Commissioner's review, E.M.T. was evaluated by a child psychologist, Dr. Michael Alexander. Dr. Alexander noted that E.M.T. was cooperative and well-groomed. E.M.T.'s speech was fluent. He estimated E.M.T.'s intellectual functioning

4

as average and opined that E.M.T. could complete age-appropriate tasks, maintain appropriate social behavior, and respond appropriately to changes in the environment. (Tr. 215-18.) That same month, E.M.T. was evaluated by a pediatrician, Dr. Tomasito Virey. Dr. Virey opined that E.M.T. was "alert, slightly hyperactive with slight short attention span [sic], friendly, cooperative." Dr. Virey also opined that E.M.T.'s "[c]ognitive functioning level seems to be less than expected for chronological age." Dr. Virey concluded that E.M.T could participate in "age-appropriate educational, social, recreational, and physical activity as long as he takes medication regularly, follows treatment source, and is monitored for progress." (Tr. 219-223.)

In a Childhood Disability Evaluation Form prepared by a Social Security Administration disability analyst dated December 15, 2006, the analyst opined, based on the Teacher Questionnaire, reports of the consultative examiners, and E.M.T.'s school reports, that E.M.T. had "less than marked" limitations acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for himself, and no limitation in his health and physical well-being. (Tr. 224-27.)

In December 2007, the Committee on Special Education conducted a second Psycho-Educational evaluation of E.M.T "as part of [its] mandated triennial review to determine [E.M.T.'s] academic and social functioning and the efficiency of his present educational program." (Tr. 231.) The evaluator noted that E.M.T. was cooperative during the evaluation, his conversation proficiency seemed adequate for his grade level, he tried to do his best on the assigned tasks, and that, although distracted at times, E.M.T. responded well to positive redirection and reinforcement. The evaluator also noted that it was "important to remember that although [E.M.T.] was able to complete tasks in a one-to-one situation with redirection and

reinforcement, he appears to have difficulty paying attention and staying on task in a large group setting." (Tr. 232.)

The evaluator noted that E.M.T's Special Education Teacher Support Services provider opined that E.M.T.'s reading and writing abilities were at a 4.9 grade level and that his math abilities were at a 2.5-3.5 grade level. It was also reported that E.M.T.'s special education teacher believed that E.M.T. "focuses more on socialization than academics" and that E.M.T. "has the capacity to excel, however [he] needs to take responsibility for his actions." (Tr. 231.) As at his first Psycho-Educational evaluation in 2004, E.M.T. was given the Woodcock-Johnson III test. Test results indicated that his overall reading level was in the average range; depending on the particular reading skill, E.M.T. tested between the 4.0-5.4 grade levels. The test results also indicated that E.M.T's "basic skills are more developed than his ability to apply his reading skills like for example understanding what he has read." In terms of math skills, E.M.T. tested at the high end of the low average range for overall ability; depending on the particular math skill, E.M.T. tested between the 3.1 to 5.3 grade levels. E.M.T.'s ability to spell was his weakest skill; he tested at a third grade level.

Based on this review, the Committee on Special Education continued to classify E.M.T. as learning disabled and recommended that he remain in General Education classes with a Special Education teacher providing support services five periods a week outside the classroom. (Tr. 230.) It was noted that E.M.T.'s academic skills had improved since his last evaluation, and that while there was room for further improvement, his reading and math calculation skills were "on or close to grade level" and his "potential is higher than his academic achievement." (Tr. 234, 240.) The Committee also opined that while E.M.T. had some difficulty following class

rules and dealing with frustration, the behavior should not seriously interfere with his instruction as it could be addressed by his teachers with constant reinforcement and redirection. (Tr. 240.)

On May 28, 2008, Torres and E.M.T. testified at a hearing before ALJ Jane Polisar. Torres testified that E.M.T., in fifth grade at the time, was doing the "same" at school and that his main problem was his inability to focus. She further testified that since Dr. Hames had increased E.M.T.'s Focalin prescription to 10 milligrams in December 2007, E.M.T. was doing a lot better in school, and that if E.M.T. was interested in a topic his ability to acquire and use information was on par with other children his age, but that if he was not interested it took him a little longer. Both E.M.T. and Torres testified that he does most of the tasks assigned to him but that he sometimes needs to be reminded to complete a task. They further testified that E.M.T. gets along with everyone, that his asthma does not limit his physical activities, that he does not put himself in danger, and that his health and general well-being are fine. (Tr. 269-74.)

ALJ Polisar denied E.M.T.'s application for benefits in a written decision dated July 17, 2008. Torres sought review of the ALJ's decision in September 2008; the Appeals Council denied her request on October 17, 2008. Torres filed the instant complaint on E.M.T.'s behalf on January 5, 2009, and the Commissioner moved for judgment on the pleadings on August 5, 2009. Torres did not object to any portion of the Commissioner's statement of facts. She did, however, submit an updated Individualized Education Program report dated June 23, 2009. The IEP report noted that E.M.T., who was 13 years old and in the sixth grade as of the date of the report, was reading and writing at a 5.5 grade level and performing math at a 4.5 grade level. The IEP report further noted that E.M.T. required constant practice and repetition, benefitted from small group instruction, and responded well to positive reinforcement. His social and emotional behavior was assessed as age appropriate. Torres also submitted a letter from the Department of

Education dated July 31, 2009, which classified E.M.T. as learning disabled and recommended that he be placed in a collaborative team teaching program when he started the seventh grade in September 2009.[1]

## DISCUSSION

I. <u>Legal Standard</u>

In order for a child under age 18 to be found disabled and eligible for Social Security disability benefits, he must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(3)(C)(i). The Commissioner has promulgated a three-step test to determine whether a child is disabled. First, the Commissioner determines whether the child is engaged in substantial gainful activity. If the Commissioner finds that he is, the child will not be awarded benefits. Second, the Commissioner determines whether the child has a "severe impairment," which is defined under the regulations as an impairment that is more than a "slight abnormality or a combination of slight abnormalities that cause no more than minimal functional limitations." Third, if the child's impairment(s) or combination of impairments is determined to be "severe," then the Commissioner must determine whether the impairment meets or is medically equivalent to an impairment in the Listing of Impairments set forth in Part B of Appendix 1 to 20 C.F.R. Part 404, Subpart P ("Listed Impairments"). If the Commissioner determines that the impairment is not medically equivalent, the Commissioner must determine whether the child's functional limitations caused by the impairment are equivalent to the

---

[1] A collaborative team teaching program is one in which a single group of students are taught by both a special education and general education teacher who share responsibility primarily in a single classroom or workplace to teach required curriculum with mutual ownership, pooled resources, and joint accountability although each individual's participation may vary.

8

disabling functional limitations of a Listed Impairment. See McCaskill ex. rel. Harris v. Massanari, 152 F. Supp. 2d 270, 273 (E.D.N.Y. 2001) (citing 20 C.F.R. § 416.924(a)-(d).

Here, the Commissioner determined at step one that E.M.T. was not engaged in substantial gainful activity and at step two that E.M.T.'s impairments were severe. At step three, however, the Commissioner found that E.M.T.'s combination of impairments was neither medically nor functionally equivalent to a Listed Impairment in the social security regulations, and the Commissioner therefore denied E.M.T.'s application. The Court may set aside the Commissioner's determination that E.M.T.'s impairments are neither medically nor functionally equivalent to a Listed Impairment "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." Lazu v. Astrue, 646 F. Supp. 2d 326, 328 (W.D.N.Y. 2009) (quoting Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002)).

II. Analysis

    A. Medically Equivalent to a Listed Impairment

The Court has reviewed the Listed Impairments set forth in Part B of Appendix 1 to 20 C.F.R. Part 404, Subpart P, in particular Listings 103.03 (asthma) and 112.11 (ADHD) and finds

that substantial evidence in the record supports the Commissioner's finding that E.M.T.'s impairments do not meet a Listed Impairment.

B. Functionally Equivalent to a Listed Impairment

In determining whether a child's impairments (or combination of impairments) are functionally equivalent to a Listed Impairment, the Commissioner considers the child's limitations in each of the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and general well-being. See Gomes v. Astrue, 633 F. Supp. 2d 171, 181 (S.D.N.Y. 2009) (citing 20 C.F.R. § 416.926a(b)(1)). A child is disabled if he has an extreme limitation in at least one of the six domains or a marked limitation in at least two domains. An extreme limitation means that the "impairment interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. (citing 20 C.F.R. § 416.926a(e)(3)(i)). It is reserved for cases involving the "worst limitations." A marked limitation means that the impairment is "more than moderate" and "less than extreme" and "interfere[s] seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. (citing 20 C.F.R. § 416.926a(e)(2)(i)).

The Commissioner determined that E.M.T. had no limitations interacting and relating with others, moving about and manipulating objects, and caring for himself, and less than marked limitations acquiring and using information, attending and completing tasks, and in his health and general well-being. Because E.M.T.'s combination of ADHD, asthma, and learning disability results in neither "extreme" limitation in one domain of functioning nor "marked" limitation in two domains of functioning, the Commissioner denied his application for benefits.

### 1. *Acquiring and Using Information*

Torres alleges that E.M.T.'s disability arose on September 1, 2003 when E.M.T. was seven years old. At the time his disability application was filed E.M.T. was ten years old. In determining whether a school-age child between the ages of six and 12 is limited in his ability to acquire and use information, the Commissioner is to consider whether the child is learning to "read, write, and do math, and discuss history and science." See Gomes, 633 F. Supp. 2d at 183 (citing 20 C.F.R. § 416.926a(g)(2)). Examples of limited functioning include an inability to demonstrate an understanding of words about space, size, or time, or to rhyme words or the sounds of words; difficulty recalling important things that were learned in school yesterday; difficulty solving mathematics questions or computing arithmetic answers; and the ability to talk only in short, simple sentences. See id. (citing 20 C.F.R. § 416.926a(g)(3)(i)-(v)).

The Court finds that substantial evidence supports the Commissioner's finding that E.M.T. has a less than marked limitation in acquiring and using information. E.M.T. speaks in full and complete sentences, and his speech is "basically intelligible," "fluent" and "adequate" for his grade level. His teacher reported that his ability to acquire and use information is only a "slight problem," and his mother testified that if he was interested in a topic he did not have a problem acquiring and using information. Further, while E.M.T. receives some special education instruction, tests indicate that his reading fluency, reading decoding, and math calculation skills are now at or close to grade level and his teacher believes that his potential is higher than his academic achievement. Moreover, while E.M.T.'s IQ score of 80 is at the low average range of intelligence relative to children of comparable age, his score is not considered under social security regulations to reflect a "marked" limitation because it falls within two standard deviations of the average score on the test. See 20 C.F.R. 416.926a(e)(2) ("[A] 'marked' limitation also means . . . [a] valid score that is two standard deviations or more below

11

the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score").[2]

*2. Attending and Completing Tasks*

This domain considers how well a child is able to focus and maintain attention, including how well the child is able to begin and finish activities and the pace at which he performs activities. A school-age child should be able to focus his attention in order to follow directions, remember and organize school work, and complete assignments. See Gomes, 633 F. Supp. 2d at 183 (citing 20 C.F.R. § 416.926a(h)(2)). Examples of limitations in this domain include whether the child is easily startled or distracted by external stimuli such as sounds and sights; unable to focus on activities of interest; repeatedly being sidetracked from activities; frequently interrupting others; easily frustrated; and requiring extra supervision to remain engaged in an activity. See Gomes, 633 F. Supp. 2d at 183 (citing 20 C.F.R. § 416.926a(h)(3)(i)-(v)).

Substantial evidence supports the Commissioner's finding that E.M.T. had less than a marked limitation in attending and completing tasks. While the record indicates that E.M.T. has some difficulty following instructions and dealing with frustration, his IEP assessment indicates that this behavior does not seriously interfere with instruction and can be addressed by his teachers through constant reinforcement and guidance. Teacher reports indicate that E.M.T. has a less than marked limitation in attending and completing tasks, and medical evaluations and Torres's testimony suggest that since starting his ADHD medication, his ability to concentrate has improved. Torres also testified that E.M.T. does most of the things that she asks him to do

---

[2] The mean score on the Stanford-Binet Intelligence Scale: Fifth Edition test is 100 and the standard deviation of the exam is 15. (Tr. 145.) E.M.T's score of 80 is less than two standard deviations below the mean.

and that he only sometimes needs to be reminded to complete the task because he does not remember to do so.

### 3. Interacting and Relating with Others

A school age child should be forming friendships with children of the same age, working in groups, and ably communicating with people of all ages. See 20 CFR 416.926a(i)(2)(iv). In considering whether a child interacts and relates well with others, the Commissioner is to consider whether the child initiates and sustains emotional connections with others; develops and uses the language of his community; cooperates with others; complies with rules; responds to criticism; and respects and takes care of the possessions of others. See 20 CFR 416.926a(i)(3)(i)-(vii). Substantial evidence supports the Commissioner's finding that E.M.T. had no limitation in interacting and relating with others. His mother testified that he gets along with others. He shares a bedroom with his older brother, has friends his age, makes new friends, and plays team sports. (Tr. 115, 144, 146-47.) Numerous reports indicate that E.M.T. is polite, "very friendly," and that he has the ability to maintain appropriate social behavior. His speech was consistently reported to be fluent and proficient and there were no problems reported with communicating with others. While his teacher opined that E.M.T. had a slight to obvious problem interacting and relating with others, she also noted that the behavior was not serious enough to warrant implementation of behavior modification strategies.

### 4. Moving about and manipulating objects

The Court finds that substantial evidence supports the Commissioner's finding that E.M.T. had no limitations in moving about and manipulating objects. His mother reported that E.M.T. had no limitations walking, running, riding a bike, throwing a ball, or performing any other physical activities normally associated with children his age. He is not restricted from any physical activities at school. Further, a pediatric neurological exam conducted on December 13,

2004, indicated normal motor skills and coordination, and a pediatric examination conducted on November 10, 2006, indicated age appropriate reflexes and fine motor activity of the hands. (Tr. 188, 219.)

### 5. *Caring for himself*

This domain considers how well a child maintains a healthy emotional and physical state, including how he copes with stress and changes in the environment and whether he is able to take care of his own health, possessions, and living space. See 20 CFR 416.926a(k). School-age children should be independent in most day-to-day activities, including dressing and bathing, be able to recognize their own abilities and limitation, avoid behaviors that are unsafe, and beginning to understand the difference between right and wrong. See 20 CFR 416.926a(k)(2).

Torres reported that E.M.T zippers and buttons his clothes, ties his shoelaces, takes a bath or shower, and washes and combs his hair without assistance, and that he does what he is told to do most of the time. She also testified that E.M.T. does not put himself in danger and that he lets her know if he has a problem. Accordingly, the Court finds that substantial evidence supports the Commissioner's finding that E.M.T. had no limitations caring for himself.

### 6. *Health and general well-being*

This domain considers the cumulative physical effects of a child's physical and mental impairments that the Commissioner did not consider when evaluating the child's ability to move about and manipulate objects. See 20 C.F.R. 416.926a(l). Examples of limited functioning include, among other things, generalized symptoms such as weakness, dizziness, agitation, and lethargy; somatic complaints such as seizures, headache, nausea, and insomnia; limitations in physical functioning because of treatment, such as chemotherapy or surgery; exacerbations from an impairment that interfere with physical functioning; and medical fragility requiring intensive care. See 20 C.F.R. 416.926a(l)(3)(i)-(v).

E.M.T.'s mother testified that other than his asthma condition, E.M.T.'s health and general well-being are "fine," and medical reports indicate no significant physical limitations or health issues. Accordingly, the Commissioner's determination that E.M.T.'s impairments caused less than marked limitation in his health and general well-being is supported by substantial evidence in the record.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings is granted and plaintiff's action is dismissed. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       June 30, 2010

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge